UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SHERRY MARTIN,

Plaintiff,

v.

PAGE BROTHERS ASSOCIATES, INC., a
Florida corporation, d/b/a CORAL
SPRINGS AUTO MALL,

Defendant.

_____/

CASE NO. 00-6037-CIV-FERGUSON
Magistrate Judge Snow





## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

The defendant, PAGE BROTHERS ASSOCIATES, INC., a Florida corporation, d/b/a

CORAL SPRINGS AUTO MALL ("Page Brothers"), submits, pursuant to Rule 56 of the Federal

Rules of Civil Procedure and Rule 7.1 of the Local Rules of the United States District Court for the

Southern District of Florida, its memorandum of law in support of its motion for final summary

judgment.

### I. PRELIMINARY STATEMENT

The plaintiff, Sherry Martin ("Martin"), initiated this action for: (1) gender and disability

discrimination under the Florida Civil Rights Act of 1992 ("FCRA"); (2) gender discrimination

under Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) disability discrimination under the

Americans with Disabilities Act ("ADA"); and (4) violations of the Family and Medical Leave Act

of 1993, 29 U.S.C. § 2601 et seq. ("FMLA").

Specifically, Martin claims that as a female she was treated less favorably than males, and

that Page Brothers terminated her on account of her disability. Moreover, Martin claims that Page

Brothers interfered with her rights under the FMLA and retaliated against her for engaging in
protected activity under the FMLA.

The undisputed facts, however, establish that Martin failed to exhaust her administrative
remedies required to bring a civil action under the FCRA. Moreover, the undisputed facts establish
that Martin was neither disabled or perceived as disabled, and that Martin was not treated less
favorably than males. Last, the undisputed facts show that Page Brothers did not interfere or
retaliate against Martin under the FMLA. Page Brothers is therefore entitled to summary judgment
in its favor as a matter of law.

## II. FACTS AND PROCEDURAL HISTORY[1]

Page Brothers is an automobile dealership operating under the name Coral Springs Honda.
It hired Martin as a Service Advisor on May 17, 1998. Martin reported directly to Steve Taborsky,
the Honda Service Manager. Taborsky reported to Jim Gilchrest, the Operations Director for the
Honda Dealership.

In June 1998, Martin was diagnosed with cancer. Martin advised her supervisor of her
condition and requested three weeks of leave beginning in late July 1998 for surgery to treat her
condition. Taborsky permitted the requested leave. In April 1999, Martin requested two weeks of
leave to travel to Australia. Although normally Martin would get only one *week* of vacation,
Taborsky was agreeable and accommodated Martin's request for an additional week off. Martin also
took "a sick day here or there" as she needed them.

---

[1]Pursuant to Local Rule 7.5 of the Local Rules of the United States District Court for the
Southern District of Florida, Page Brothers has submitted a separate Statement of Undisputed
Material Facts with record citations in support of its Motion for Summary Judgment, but provides
the following narrative for the Court's convenience.

Service Advisors are responsible for dealing directly with customers who bring their cars in for repairs. One of the most important measures of a Service Advisor's performance is the Customer Satisfaction Index ("CSI"), which is based on customer survey results. Those surveys are sent directly to the customer by the manufacturer, in this case Honda, for feedback regarding the service the customer received. The manufacturer then forwards the results of the surveys to the Dealership.

Throughout her employment, Martin received poor CSI scores based on these independent customer surveys. The manufacturer's standard for CSI scores was 90 for the period of November 1998 to January 1999, and 91 for all periods thereafter. Martin's scores ranged from 81.4 to 85.4 from November 1998 to August 1999, and were consistently the lowest among the service advisors. Other service advisors complained to Taborsky that Martin was not taking care of her customers, requiring them to do her work.

Taborsky verbally counseled Martin on her poor customer handling and low CSI scores several times. He gave Martin recommendations and advice on how she could improve her customer handling skills. For example, Taborsky suggested to Martin that she write fewer service orders so that she could properly attend to those orders. Martin, however, refused to write fewer orders.[2] On August 24, 1999, after months of verbal counseling, Taborsky gave Martin a written warning notice regarding her low CSI scores. Attached to the written warning was a detailed plan on what Martin needed to accomplish in order to improve her scores.

In late August 1999, Martin requested that she be allowed to leave early each afternoon for three weeks while she underwent radiation treatment. Taborsky permitted her to do so. During her

---

[2] Service Advisors are paid straight commissions based on the amount of orders they write.

3

second week of treatment, Martin felt anemic and thought she might have the flu. Her doctor advised her to stay home for the week. Martin spoke with Taborsky about the situation. Taborsky had no problem with Martin taking the week off and said, "okay just feel better and I'll see you on Monday."

Martin intended to take another week of leave beginning September 6, 1999, but chose to come to work instead because one of the other service advisors was on vacation. She worked Tuesday through Friday. On Saturday, September 11, 1999, Martin called the dealership and advised one of the service advisors that she was not feeling well and was not going to come in. According to Martin, when she returned to work the following Monday, Taborsky told her that he had to terminate her employment because of her health – because "it's affecting your customer service scores and it's affecting your job performance." Martin's termination was effective as of September 13, 1999.[3]

On October 29, 1999, Page Brothers offered Martin a job in an administrative position at the dealership inputting and analyzing data for the service department. Jim Gilchrest explained to Martin that, because the position did not involve direct customer dealing, her hours would be more flexible. Gilchrest told Martin that she would be paid $10-$12 an hour and that her benefits would be reinstated retroactively. Martin, however, declined that offer.

In the six months following her termination, Martin applied for full-time positions at various other dealerships. One of the positions for which she applied was a service advisor at Delray Lincoln Mercury. Delray Lincoln Mercury offered Martin that job; however, Martin did not report

---

[3]Martin had also been counseled for writing too many customers orders and for low customer service scores at the previous dealership for whom she worked.

4

for work on the day that her new employer expected her. Martin said there was a mix-up; however, she did not follow up with that employer to see whether she could still work for that dealership, notwithstanding her confusion regarding her initial report date.

Martin collected unemployment benefits for the six months for which she was eligible after her termination from Page Brothers. During that time, Martin regularly certified during that period that she was able and available for full-time work. She also certified that there was nothing prohibiting her from accepting full-time work.

Just before her unemployment benefits ran out, Martin applied for disability benefits from the Social Security Administration, claiming that she was disabled from working. The SSA found that Martin was totally disabled and has been paying her disability benefits since February 2000 based on that determination.

Martin, who also had experience in accounting and office management, subsequently obtained employment as an office manager at an auto repair shop, where she remains employed. Her duties include customer service, writing repair orders, giving estimates for repair work, and billing. Martin works approximately 35 hours per week, and sometimes as many as 40, but no matter how many hours she works, she is paid only $700 month so that she does not become ineligible for her Social Security disability benefits.

On September 25, 1999, Martin dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") alleging disability discrimination. On January 31, 2000, Martin dual-filed another charge of discrimination with the EEOC and FCHR alleging sex discrimination. Following each charge, Martin immediately asked that the investigation of her charge be terminated and that a right-to-sue

5

be issued under federal law. Martin, however, filed her complaint in this case alleging sex and disability discrimination under the FCRA on January 7, 2000, 104 days after filing her disability discrimination charge and 24 days <u>before</u> filed her sex discrimination charge.

## III. ANALYSIS AND CITATION OF AUTHORITY

### A.    Standard for Granting Summary Judgment

Summary judgment is appropriate if there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Kee v. National Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990). The summary judgment procedure should not be regarded as a "disfavored procedural shortcut," but as an integral part of the federal rules, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. at 327.

Under Federal Rule of Civil Procedure 56, a defendant has no burden other than "pointing out to the district court [] that there is an absence of evidence to support [plaintiff's] case." *Celotex*, 477 U.S. at 325; *see also Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (summary judgment may be based solely on the absence of record evidence in support of the plaintiff's claim), *cert. denied*, 507 U.S. 911 (1993). To survive summary judgment, a plaintiff must affirmatively designate facts of record sufficient to establish every element upon which she bears the burden of proof at trial. *Celotex*, 477 U.S. at 324. A mere "scintilla of evidence" in support of a plaintiff's position is insufficient to defeat a properly supported motion for summary judgment. *Id.* The failure to demonstrate probative evidence on <u>any</u> element is fatal and requires summary judgment for the defendant. *Id.* at 322-23; *Parks v. City of Warner Robins*, 43 F.3d 609, 612 (11th Cir. 1995).

6

**B.    Page Brothers Is Entitled to Summary Judgment on Martin's FCRA Claim Under Count IV Because Martin Failed to Satisfy the Administrative Prerequisites for Bringing Suit Under that Statute**

Section 760.11(4)(a), Florida Statutes, states that an aggrieved person may not bring a civil action under the FCRA unless (a) the FCHR has made an affirmative determination of "reasonable cause to believe that a discriminatory practice ha[s] occurred," or (b) under section 760.11(8), the FCHR has failed to act on the complaint for 180 days. *See Ayers v. Wal-Mart Stores, Inc.,* 941 F.Supp. 1163, 1166 (M.D. Fla. 1996) (granting summary judgment for defendant on plaintiff's FCRA claim because plaintiff did not allow the FCHR 180 days to investigate claim and filed FCRA claim prematurely after only waiting 117 days); *Wells Fargo Guard Services Inc. of Florida v. Lehman,* No.3D99-2539, 2000 WL 1397771, \*1 (Fla. 3rd Dist. Ct. App. Sept. 27, 2000) (dismissing FCRA claim as premature because the complaint alleging an FCRA violation was filed before allowing the FCHR 180 days to investigate); *Sweeney v. Florida Power and Light Co., Inc.,* 725 So. 2d 380, 380 (Fla. 3rd Dist. Ct. App. 1998) (dismissing FCRA claim because it was filed 20 days before the expiration of the 180 days and stating that such premature filing was "fatal"); *Brewer v. Clerk of the Circuit Court, Gadsen County,* 720 So. 2d 602, 604-05 (Fla. 1st Dist. Ct. App. 1998) (same).

In this case, Martin failed to exhaust the administrative requirements stated above before filing her FCRA claim alleging gender and disability discrimination. Martin first dual-filed a charge of disability discrimination with the EEOC and the FCHR on September 25, 1999. Martin later dual-filed another charge for sex discrimination with the EEOC and the FCHR on January 31, 2000. Her complaint asserting an FCRA claim for disability and gender discrimination, however, was filed on January 7, 2000-- only 104 days after filing her charge alleging disability discrimination and 24

7

days before she had filed her charge alleging sex discrimination. In both cases, the complaint was

filed well before the 180 day period had elapsed. Moreover, in both cases, Martin requested that the

investigation of her charges be terminated and that an immediate right-to-sue notice be issued under

federal law.

As the court stated in *Ayers*:

> [t]o allow [plaintiff] to proceed on the FCRA claim, without having
> waited the required 180 period, would permit her to successfully
> circumvent the possibility of a dismissal and being locked into the
> sole remedy of an administrative hearing. By [plaintiff's] own
> request, the investigation of her complaint was terminated prior to the
> expiration of the 180 day period. The Court will not allow Ayers, by
> halting her investigation and filing suit before 180 days expired, to
> circumvent the carefully-crafted procedural requirements set forth
> under the FCRA.[4]

941 F. Supp. at 1166. Likewise, Martin must not be permitted to circumvent the limitations and

requirements of the FCRA.

Accordingly, because Martin filed this action less than 180 days after filing her

administrative charges, her claims under the FCRA are procedurally barred under Section 760.11,

Florida Statutes. This Court should therefore grant summary judgment for Page Brothers on

Martin's FCRA claims.

---

[4]Under the FCRA, if the FCHR had dismissed Martin's claim, she could not have sued and
her only recourse would have been to request an administrative hearing within 35 days of the
dismissal. Fla. Stat. § 760.11(7). If Martin had not requested an administrative hearing within that
time, the claim would have been barred under the FCRA. *Id.*

8

## C.    Page Brothers Is Entitled to Summary Judgment on Martin's Sex Discrimination Claim Because She Cannot Show Less Favorable Treatment [5]

To establish a claim for gender discrimination, Martin first make a *prima facie* showing: (1) that she is a member of a protected minority; (2) that her job performance was satisfactory; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly situated male employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Taylor v. Runyon*, 175 F.3d 861, 866 (11th Cir.1999).

Martin alleges that she was treated less favorably than males in two respects. First, she alleges that money was deducted from her paycheck for low CSI scores but that males were not subject to similar deductions. Secondly, she argues that she was treated less favorably than similarly situated males when she requested leave. In both cases, Martin cannot establish the fourth element of the *prima facie* case because she has no evidence of any disparate treatment.

First, with regard to the docking of money, Martin has no evidence to support her allegation that males did not receive similar deductions from their paychecks for low CSI scores. Rather, Taborsky has attested that he did deduct money from male service advisors, including James Cocchiola and Lee Irwin, for low CSI scores. Cocchiola confirmed that Taborsky docked his pay for low CSI scores. Martin has adduced no evidence to controvert those facts.

---

[5]Martin brings her gender and disability discrimination claims under both federal and state law. As Page Brothers has argued above, Martin's discrimination claims under the Florida Civil Rights Act are procedurally barred. Assuming, however, that Martin had properly exhausted her administrative remedies under the FCRA, those claims would be construed in conformity with the case law developed under Title VII and the ADA. *See, e.g., Smith v. Avatar Properties, Inc.*, 714 So. 2d 1103, 1106-07 (Fla. 5th DCA 1998); *Greene v. Seminole Elec. Co-op., Inc.*, 701 So. 2d 646, 648 (Fla. 5th DCA 1997); *Florida Department of Community Affairs v. Bryant*, 586 So. 2d 1205, 1209 (Fla. 1st DCA 1991).

9

Second, with regard to medical leave, Martin has also failed to produce any evidence to show that she was treated less favorably than males. Throughout Martin's entire employment with Page Brothers, she was never denied leave. Every request Martin made for leave, whether medical, vacation or sick, was granted. Specifically, Martin was granted three weeks off for surgery, two weeks off for vacation, a week and numerous afternoons off for radiation treatment, and numerous sick days. Martin has presented absolutely no evidence of male employees who were treated more favorably in terms of being granted leave.

Accordingly, because Martin has failed to present any evidence that would create a genuine issue of material fact regarding whether she was treated less favorably than similarly situated males, she is unable to establish a *prima facie* case for sexual discrimination. This Court should therefore grant summary judgment on Martin's claims for sexual discrimination.

**D.    Page Brothers Is Entitled to Summary Judgment on Martin's Disability Discrimination Claim Because She Cannot Establish a Prima Facie Case**

To establish a *prima facie* case of disability discrimination, Martin must show that: (1) she has a disability; (2) she is a qualified individual; and (3) she was discriminated against because of her disability. *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998). Martin fails to satisfy any of these elements.

**1.    Martin Did Not Have a Disability at the Time of Her Termination**

First, Martin has failed to state a *prima facie* case of disability discrimination because the undisputed facts show that she was not "disabled" within the meaning of the ADA. A "disability" is defined as: (a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such impairment; or (c) being regarded as having such

10

an impairment. *See Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998); 42 U.S.C.

§ 12102(2). In this case, Martin contends that her cancer substantially limited her major life

activities of working and walking. The undisputed facts, however, demonstrate otherwise.

a.    Working

The United States Supreme Court has held, "[w]hen the major life activity under

consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum,

that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Airlines*, 119

S. Ct. 2139, 2151 (1999). Under this standard:

> one must be precluded from more than one type of job, a specialized
> job, or a particular job of choice. If jobs utilizing an individual's
> skills (but perhaps not his or her unique talents) are available, one is
> not precluded from a substantial class of jobs. Similarly, if a host of
> different types of jobs are available, one is not precluded from a
> broad range of jobs.

*Id.*; *see also* 29 C.F.R. §1630.2(j)(3)(i) (defining "substantially limited" in working as being

"significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in

various classes as compared to the average person having comparable training, skills and abilities.")

(emphasis added).[6]

---

[6]The courts have relied on the following additional factors in evaluating whether a plaintiff
is substantially limited in the ability to work: (1) the geographical areas to which the individual has
reasonable access; (2) the job from which the individual was disqualified and the number and types
of jobs using the same abilities within the geographical area from which the individual is also
disqualified; and (3) the job from which the individual was disqualified and the number and types
of jobs not using the same abilities within the geographical area from which the individual is also
disqualified. *See, e.g., Bolton v. Scrivner*, 36 F.3d 939, 943 (10th Cir. 1994), *cert. denied*, 115 S.
Ct. 1104 (1995); 29 C.F.R. § 1630.2(j)(3)(ii).

11

Martin has consistently maintained that she was physically able to work full-time at the time of her termination. Immediately after her termination from Page Brothers, Martin applied for numerous full-time positions with other employers. She testified that she was fully capable of performing those jobs and attested to the same in the course of pursuing her unemployment benefits. Within a few months after she left Page Brothers, Martin sought and was offered a Service Advisor position with another auto dealership. She did not become employed in that position simply because of a "mix-up" in her starting date. Martin subsequently obtained employment as an office manager for an auto repair shop working 35-40 hours per week, and is currently employed there.

Indeed, Martin offers no evidence whatsoever to support a claim that she was "substantially limited" in her ability to work at the time of her termination. To the contrary, the undisputed evidence affirmatively establishes that Martin was qualified for various classes and ranges of jobs. Given her experience and capabilities, Martin cannot show that at the time of her termination, she was excluded from a broad range of jobs or that she was disadvantaged in her general employment opportunities, as compared to an average person with similar training, skills, and abilities. Accordingly, Page Brothers is entitled to summary judgment on that claim.

                    b.    Walking

Martin has likewise failed to produce sufficient evidence to create a jury question regarding whether she was substantially limited in her ability to walk. In *Kelly v. Drexel University*, the plaintiff suffered from "severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint" and consequently walked with a "noticeable" limp. 94 F.3d 102, 103-04 (3rd Cir.1996). Noting that Kelly admitted that he was able to walk, the circuit court framed the question as "whether he adduced sufficient evidence from which a factfinder reasonably could

                                        12

conclude that the nature and severity of his injury significantly restricted his ability to walk as compared with an average person in the general population." *Id.* at 105. In addition to his treating physician's statement that Kelly's "condition causes him great difficulty in walking around," Kelly produced evidence that "he could not walk 'more than a mile or so' and that he 'certainly couldn't jog' . . . [and] that when climbing stairs, 'I have to pace myself slower, and I would, naturally, hold onto the rail.' " *Id.* at 106.

Although the Third Circuit recognized that "[i]t is difficult, indeed perhaps not possible, to draw a bright line delineating the point at which a condition affecting an employee's ability to walk can be regarded as a disability within the ADA," it is "clear that comparatively moderate restrictions on the ability to walk are not disabilities." *Id.* at 108. The court then concluded in *Kelly* that the plaintiff's impairment did not substantially limit the major life activity of walking and that Kelly was therefore not disabled under the ADA. *Id.*

In this case, the only record evidence regarding Martin's ability to walk at the time of her termination is that she could not do "excessive" walking. Martin's limitation is thus significantly less substantial than the plaintiff's limitations in *Kelly*, which the appellate court found insufficient as a matter of law to establish a disability under the ADA. Because the inability to do "excessive" walking is insufficient evidence upon which a reasonable juror could find that plaintiff was substantially limited in the major life activity of walking and, thus, that Martin was disabled, Page Brothers is entitled to summary judgment on Martin's disability claim.

13

c.    Martin Presents No Evidence of Regarded as or Record of Disability

Martin also alleges in her complaint that Page Brothers discriminated against her under the "regarded as" and "record of" prongs of the statute. Martin, however, presents no evidence in support of either.

i.    Regarded As

According to the United States Supreme Court, "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521-22 (1999). As with real impairments, "a perceived impairment must be substantially limiting and significant." *Gordon v. E.L. Hamm & Assoc., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996); *see also Story v. Sunshine Foliage World, Inc.*, 120 F. Supp.2d 1027 (M.D. Fla. 2000).

In this case, Martin has failed to present any evidence that Page Brothers "perceived" her as being disabled and that, based on that perception, it terminated her employment. Even assuming that Taborsky believed that Martin's condition was affecting her ability to perform her particular job as a Service Advisor because of her low CSI scores, there is no evidence that he perceived Martin as significantly restricted in her ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Indeed, shortly after her termination, Page Brothers offered Martin another job that did not involve direct dealing with customers.

In the absence of any evidence to support a finding that Page Brothers regarded Martin as substantially limited in her ability to work generally, Martin has failed to demonstrate any genuine issue of material fact on her "regarded as" claim. *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir.

14

2000 (affirming summary judgment for employer because employee had failed to present any evidence that employer considered her as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities"). Page Brothers is therefore entitled to summary judgment on that claim.

ii.    Record Of

Having a "record of" an impairment means that the employee "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k) "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability" and to "ensure that individuals are not discriminated against because they have been misclassified as disabled." 29 C.F.R. pt. 1630, App. § 1630.2(k).

"The record-of-impairment standard is satisfied only if [the plaintiff] actually suffered a physical impairment that substantially limited on or more of her major life activities." *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999). As indicated above, Martin fails to show that she is substantially limited in her ability to walk or work. Indeed, Martin has presented no evidence whatsoever in support of this claim.

Martin cannot survive summary judgment on her "record of"claim based on the conclusory allegation in her complaint. *Id.* Accordingly, the Court should grant summary judgment in favor of Page Brothers on that claim.

15

**E.    Page Brothers is Entitled to Summary Judgment on Martin's FMLA Claim**

The FMLA makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). Under the FMLA, eligible employees who take leave are entitled to be restored "to the position of employment held by the employee when the leave commenced" or "to an equivalent position" upon their timely return from such leave. 29 U.S.C. § 2614(a)(1). The FMLA also makes it unlawful for an employer to discriminate against an employee for engaging in protected activity under the FMLA. Martin alleges both interference and retaliation.

Page Brothers is entitled to summary judgment on Martin's interference and retaliation claims under the FMLA. The undisputed record evidence demonstrates that Martin had no right to restoration because, regardless of her FMLA leave, she would have been terminated upon her return to work. The undisputed record evidence also demonstrates that Martin has no retaliation claim because she never mentioned or referred to the FMLA at any time prior to her termination. Therefore, no one at Page Brothers had any knowledge or notice that Martin was invoking the protection of the FMLA during any of her leaves.

**1.    Page Brothers Did Not Interfere with Martin's Right to Reinstatement Because Her Termination Was Wholly Unrelated to Her FMLA Leave**

An employer can deny an employee the right to reinstatement where it can show that it would have discharged the employee had he not been on FMLA leave. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1354 (11th Cir. 2000); *see also* 29 U.S.C. § 2614(a)(3) (qualifying the right to reinstatement so that an employee returning from FMLA leave is not entitled to "any

16

right, benefit, or position of employment other than any . . . to which the employee would have been entitled had the employee not taken leave"); 29 C.F.R. § 825.216(a) (same).

In this case, Martin's termination had nothing to do with her FMLA leave and everything to do with her performance. When Martin returned to work following her taking a sick day on Saturday, September 11, 1999,[7] her employment history included months of poor customer service scores, co-worker complaints about her performance, and numerous counseling sessions, including one in writing, about her poor customer service scores and her poor customer handling skills.

Martin was the same employee with the same performance problems when she returned from her one-day leave. It was because customer service scores are so important to Page Brothers, because Martin's scores were the lowest among her co-workers, and because Martin had failed to improve her customer handling skills despite numerous warnings, that Taborsky decided to terminate Martin's employment. The fact that Martin had taken a day of FMLA leave did not insulate her from an adverse employment decision unrelated to that leave. *Cf. O'Connor* 200 F.3d at 1354 (holding that "[a]n employee has no greater right to reinstatement or to other benefits and conditions than if the employee had been continuously employed during the FMLA leave period").

In this case, the reason for Martin's termination – poor customer service skills – is clear. The Court should therefore grant summary judgment against Martin on her claim for interference under the FMLA.

---

[7]For purposes of this motion only, Page Brothers does not dispute that Martin's one day of sick leave on Saturday, September 11, 1999, could be considered as FMLA leave.

17

### 2.    Page Brothers Did Not Retaliate Against Martin Under the FMLA Because No One at Page Brothers Had Knowledge that Martin Was Engaging in Protected Activity

To establish a claim for retaliation under the FMLA, Martin must allege that: ( 1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001); *Parris v. Miami Herald Publ'g Co.*, 216 F.3d 1298, 1301 (11th Cir.2000). Martin cannot survive summary judgment on her retaliation claim because she failed to adduce evidence sufficient to create a genuine issue of material fact on the third element of her *prima facie* case – that Page Brothers terminated her employment for engaging in protected activity under the FMLA.

In *Strickland*, the plaintiff told his supervisor that he was leaving work for the rest of the day because his "diabetes was acting up." 239 F.3d at 1202. The plaintiff was terminated a week later, in part for "walking off the job" that day. *Id.* at 1203. The Eleventh Circuit held that summary judgment was appropriate on the plaintiff's retaliation claim under the FMLA because, notwithstanding the plaintiff's reference to his medical condition as the reason for his leave, "nothing [in the record] would permit a jury to find that [plaintiff's supervisor] or anyone else employed by the [defendant] had notice that [plaintiff] was invoking the protection of the FMLA when he left work that day. Nor did [plaintiff] refer to the FMLA at any time prior to the [defendant's] March 14 decision to discharge him." *Id.*

The plaintiff in *Strickland* argued that the timing of leave and his termination was sufficient to satisfy the causal element of his *prima facie* case. *Id.* at 1207. The court explained, however, that "[s]uch evidence cannot satisfy the third element in a case, like the one here, in which the

18

'unrebutted evidence [is] that the decision maker did not have knowledge that the employee [had engaged, or was attempting to engage,] in protected conduct.'" *Id.* at 1207-08 (quoting *Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). Accordingly, even though the plaintiff had advised his supervisor that he was leaving work due to his medical condition (diabetes), and even though his absence was considered FMLA leave, the Eleventh Circuit held that his termination shortly thereafter based, in part, on that absence was not retaliation. *Id.*

As in *Strickland*, there is absolutely no evidence or allegation that Martin ever mentioned or referred to the FMLA at any time prior to her termination. Therefore, no one at Page Brothers, including Taborsky, had any knowledge or notice that Martin was invoking the protection of the FMLA during any of her leaves. Because, as the Eleventh Circuit has clearly stated, "[a] decision maker cannot have been motivated to retaliate by something unknown to him," Martin cannot prove her retaliation claim under the FMLA. See *Brungart*, 231 F.3d at 799. Accordingly, the Court should grant summary judgment on Martin's retaliation claim under the FMLA.

### IV. CONCLUSION

For the reasons stated, Page Brothers respectfully submits that it is entitled to summary judgment in its favor on Martin's complaint in its entirety.

Date:    April  11, 2001

FISHER & PHILLIPS LLP                    By: _____
2300 Bank of America Tower                      Cathy M. Stutin
One Financial Plaza                             (Fla. Bar No. 0865011)
Fort Lauderdale, Florida 33394                  Francisco Lopez, Jr.
Telephone: (954) 525-4800                       (Fla. Bar No. 0181617)
Facsimile: (954) 525-8739

                                                Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on   this date I caused a true and correct copy of the foregoing

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR FINAL**

**SUMMARY JUDGMENT** to be served on the following individual by depositing same in the

United States Mail, First Class, postage prepaid:

> Loring N. Spolter, Esquire
> International Building
> 2455 E. Sunrise Boulevard
> Suite 807
> Fort Lauderdale, Florida 33304

Date:   April _16_, 2001